Per Curiam.

(No. 6281—

Jenkins, Merchant & Nankivil, a partnership composed of Carter Jenkins, and Charles Merchant, Claimant, vs. State of Illinois, Department of Public Works and Buildings and Department of Mental Health, Respondent.

*Opinion filed March 26, 1975.*

Sorling, Catron & Hardin, Attorney for Claimant.

William J. Scott, Attorney General; Douglas G. Olson, Assistant Attorney General, for Respondent.

Holderman, J.

This action arises out of two contracts entered into between Jenkins, Merchant, and Nankivil, consulting engineers sometimes referred to as Associate Engineers, and respondent State of Illinois.

One contract was for professional engineering services for road improvements at Manteno State Hospital. The amount earned and owing is $12,081.27. The State admitted this amount was due and owing in its Departmental Report and at the time of the hearing. There is no dispute as to the amount of $12,081.27.

The second contract was for structural and professional engineering services for air conditioning various buildings at Anna State Hospital, Anna, Illinois. Jenkins claims that there is $2,696.06 earned and owing on this contract. The State acknowledges and argues that there is only $1,282.51 due and owing on this contract.

Thus the amount in dispute in this case is $1,413.55.

This difference of $1,413.55 arises because the claimant and the State disagree on the manner in which claimant's fee was to be computed under claimant's contract with the State.

The contract between the State and claimant provides how claimant was to be paid for the engineering services rendered. Both the State and claimant agree that compensation was to be based on 8% of the amount of the construction contract if the amount was under $200,000.00 and 7% if the amount was over $200,000.00.

In accordance with the contract, claimant submitted an estimate on the "Anna State Hospital Job" of $167,000.00 on January 16, 1967. On March 18, 1967, after bids on the job were received, claimant submitted another estimate on the same job due to the great disparity between the estimates and the bids received. The

March 18, 1967, estimate was in the amount of $212,000.00. Claimant asserts that he should be paid on the basis of a percentage of the March 18, 1967, estimate; the State argues that claimant should be paid on the January 16, 1967 estimate. Claimant also asserts that the contract does not cover the factual situation here present, and that claimant should be paid for an "extra".

It is clear that the contract between claimant and the State dated July 20, 1966, calls for the computation of claimant's fee to be made upon the basis of a "revised final estimate upon completion of drawings and specifications and *prior to advertising for bids*". Due to the foregoing provision in the contract between claimant and the State, claimant is compelled to argue that the claim of claimant for additional compensation is due to extra work not contemplated by the parties or an implied modification of the contractual terms between the parties since the March 18, 1967, estimate was prepared and submitted after the bids were received.

With respect to claimant's first contention, claimant argues that it is entitled to compensation for extra work done when the extra work is authorized and requested by the owner. However, only proof with respect to any requests for a revised estimate came through the testimony of claimant's witness, Mr. Carter Jenkins, who testified that the State requested the second estimate by telephone. On cross-examination, Mr. Jenkins testified, with respect to the great disparity between the original estimate and the bids received, that claimant was asked to give its opinion as to what the cause may have been for the disparity, and in so doing claimant submitted a revised estimate. It is clear that the contract between claimant and the State contemplated that the State could require claimant, after bids had been received, to exam-

ine the bids and receive requests for approval of materials and equipment and forward recommendations to the Supervising Architect.

Mr. Volk of the Supervising Architect's office testified that when the bids came in, it was "quite evident that the bids were very much in excess of the Associates final estimate". Volk went on to testify that the Supervising Architect's office requested the analysis of the Associate and reasons why the bids were so high so that it could be determined whether the biding contractors were "way out of range" or whether the "estimate was too low." At first, claimant submitted a letter of March 4, dealing with the disparity between the estimate and the bids received. This was deemed to be insufficient by the Supervising Architect's office and the Supervising Architect requested a further explanation as to why the prices were so high compared to the estimate. It was at this point in time that the March 18, 1967, estimate was submitted by claimant.

There was no proof that the State at any time prior to the receipt of the March 18, 1967, estimate had agreed to pay claimant additional compensation for the March 18, 1967, estimate. Therefore, claimant's first assertion that the "extra" consisting of the March 18, 1967, estimate should be paid for must be denied for the reason that there was no agreement shown on the part of the State to pay for the extra services, if indeed the revised estimate of March 18, 1967, was, in fact, an extra service.

Claimant's second contention, that there was a modification of the contract, must also be denied for the reason that the contract specifically requires that payment of the Associate be based upon the final estimate *prior to the receipt of bids.* There was no testimony that it was the intention of either the State or claimant, either

by expressed acknowledgement or by necessary implication, that claimant's payment would be based on an estimate prepared after bids were received. There is nothing in the record to show that it was the manifest intention of the representatives of the State or of claimant to adjust claimant's payment on the basis of the March 18, 1967, estimate. Claimant failed to prove original agreement for compensation in excess of that agreed upon in the contract.

The State's argument, that if the Associate Engineer was to be paid on the basis of estimates revised *after* the receipt of bids it would encourage associate engineers to make high estimates and defeat the purpose of obtaining estimates prior to the receipt of bids, must be accepted as valid in light of the contract and in light of the specific requirement of the contract that the Associate's fee be calculated on the basis of the esimates *submitted prior* to the opening of bids.

At best, the evidence showed a misunderstanding between the office of the Supervising Architect and claimant that would not have occurred if claimant's original estimate submitted on January 16, 1967, had not been grossly in error.

It is, therefore, the opinion of this court that claimant should be awarded the sum of $12,081.27 which is unpaid on the Manteno contract because of the lapsing of the appropriation; and, in addition, the sum of $1,282.51 which is the amount claimant should be paid on the Anna State Hospital contract under the express terms of the contract. Claimant's additional claim of $1,413.55 must be denied.

Claimant is hereby awarded the total sum of $13,363.78 in full settlement of this claim based upon a contract.